## MORAN, et ux v. COUTURES MOTOR CORP., et al.
### No. 58 L 2231.

Circuit Court, Dade County.

November 13, 1959.

Nichols, Gaither, Green, Frates & Beckham, Miami, for plaintiffs.

Hill, Welsh, Cornell, Ross & Pyszka, Miami, for defendant Samuel Mosberg.

Knight, Smith, Underwood & Peters, Miami, for defendant Hertz Corp.

Lane, Primm & Lane, Miami, for defendant DiLido Hotel, Inc.

Frank & Weston, Miami Beach, for defendants Caru Corp., Coru Corp., DiLido Door & Parking Lot Corp., Sidney Feuer and DiLido Hotel Door & Parking Lot Corp.

Smith & Mandler, Miami Beach, for defendant Pershing Auto Rentals, Inc.

ROBERT H. ANDERSON, Circuit Judge.

Samuel Mosberg is a resident of New York. On July 3, 1954 he came to Miami Beach by plane for rest and a vacation. He went to the DiLido Hotel on Miami Beach and checked in as a guest. He had a car delivered to his hotel by Coutures Motor Corporation (Now the Hertz Corporation). That evening he got the car and

took a lady friend out to dinner. After delivering her at her home, he came back to the DiLido Hotel about 10:30 that evening. He left the car with the doorman in charge, who was an employee of Sidney Feuer, the parking lot concessionaire of the DiLido Hotel. Nothing happened.

On the following day, July 4, about 8 or 8:30 P.M., Mosberg again called downstairs for his car; he gave the car number and the car was brought to him at the front door of the hotel. He went by and picked up the same lady with whom he had been the evening before and again took her to dinner. He came back to the hotel and turned the car back over to the doorman, as he had the evening before, and went to bed. During the night he received a phone call from one identifying himself as connected with the police department who told him that his car had been in an accident and that two people had been killed. He says that he told the officer that it was "not my car" * * * "who stole the car, because I did not give anybody any permission; if the car was left there I couldn't tell why it would be in an accident".

Edward Lee Gill, to whom Mosberg delivered the car, was the employee of Sidney Feuer, the parking lot concessionaire. Instead of parking the car in the parking lot across the street from the DiLido Hotel that was rented by Feuer for that purpose, he drove the car down to Al's Bar. There he struck up with an acquaintance by the name of Anthony and they had a few beers together.

Ellen K. Moran was a waitress at Luigi's Restaurant at Washington Avenue just below 5th in Miami Beach. She worked the late shift that night and got off about one o'clock in the morning. She went over to Al's Bar nearby where she waited for a jitney that never arrived. A barmaid got into a conversation with her and asked if she would like a ride over to Miami with Gill and Anthony. She said 'no' at first. The barmaid assured her that it would be perfectly all right for her to ride with these men because she knew them; so she was introduced and shortly afterwards they left the bar. They asked her if she wanted to go to Miami and she said 'yes'.

They went up to the DiLido Hotel where Gill got out and went inside for a few minutes and then came back out; then they went across MacArthur Causeway and toward Miami. Mrs. Moran lived in the neighborhood of 9th Street and Biscayne Boulevard. They did not stop there; they went to the Spur Bar which is about 3rd Street near the Post Office. There she had one or two drinks with Gill and Anthony and they had several; they got back in the car

and she begged them to stop and let her off near her home but they refused. They went back across the MacArthur Causeway. Gill was driving the car and going faster and faster all the time. Their speed was in excess of 80 miles an hour. They came to a curve on the causeway which they failed to make and the car crashed. Gill and Anthony were killed and Mrs. Moran was seriously and permanently injured.

Based upon the foregoing facts, Ellen K. Moran brought this suit against the Hertz Corporation, as the owner of the car; against Samuel Mosberg as the lessee of it; against Sidney Feuer as the concessionaire of the parking privileges and the DiLido Hotel because "the car rental agency entrusted and delivered possession of the car" to it.

There were other parties defendant named in the complaint but the claims against them were abandoned. Plaintiff alleged various and sundry acts of negligence by the defendants, jointly and severally. Each of the defendants filed a motion for summary judgment and the case is before the court on these motions. We will deal with them seriatim.

The motion by Samuel Mosberg will be granted. It simply does violence to all of this court's concepts of tort liability to say that a stranger who comes to town, goes to a hotel and checks in as a guest, rents an automobile, uses the car, brings it back at an early hour in the evening and delivers it to a doorman to be parked, can be held liable for an accident resulting from the doorman's negligence in his unauthorized use of the car after it was delivered to him.

The same is true of the DiLido Hotel, Inc. Mosberg was a guest at the hotel. It had let out the parking lot privileges to Feuer, the concessionaire. The hotel exercised no authority over Feuer, his employees or the parking lot. It was as though Mosberg had driven up to the hotel in a taxicab, paid his fare and discharged the cab. Surely no one would contend that the hotel was liable for the subsequent actions of the driver of the taxi. The motion for summary judgment on behalf of the DiLido Hotel, Inc. will be granted.

The motion on behalf of the Hertz Corporation will be granted. In the case of Susco Car Rental System of Florida v. Leonard (1959), 112 So. 2d 832, the Supreme Court of Florida upheld the District Court of Appeal, 3rd District, in its reversal of the Circuit Court of Dade County. It held the automobile rental company liable for injuries due to the negligence of its lessee, notwithstand-

ing a provision of the rental contract that the car was not to be operated by anyone other than the person to whom it was rented. With that decision we have no quarrel. The court was careful to point out, however, that the decision was based upon the dangerous instrumentality doctrine effective in Florida and said at page 835 —

> "To this we might add an observation that, whatever may have been the deviations from this course, the logical rule, and, we think, the prevailing rationale of the cases, is that when control of such vehicle is voluntarily relinquished to another, *only a breach of custody amounting to a species of conversion or theft will relieve an owner of responsibility for its use or misuse."* (Emphasis supplied.)

The quoted exception fits this case exactly. Here there was a breach of custody by Gill, the employee of the parking lot concessionaire, amounting to a species of conversion or theft which relieved the Hertz Corporation of responsibility for its misuse. See also, Sykes v. Babijuice Corp. (Fla. 1953), 63 So. 2d 65, where the defendant's employee, who was not authorized to drive its motor vehicles and did not have a driver's license and without the express or implied permission of defendant, took one of its trucks from the parking area and drove it from the premises on a personal mission, while driving down the highway he collided with an automobile in which the plaintiff was riding, causing injuries which resulted in his death. We quote —

> "The basic issue for determination is whether under the facts stated the defendant may be held liable in damages for the alleged negligent acts of the night watchman Holt.

> "We find no error in the judgment appealed from. It is plain that Holt was not acting within the scope of his employment when he took the defendant's truck from the premises. It is plain, moreover, that Holt was not using the motor vehicle at the time of the accident with the defendant's knowledge or consent, express or implied. There is no showing that prior to the accident Holt had ever taken a motor vehicle of the defendant from the parking area and operated it on the highway with the knowledge of the defendant, thereby raising any question of agency by acquiescence. After giving full consideration to the records and briefs, we are unable to find any theory upon which recovery in favor of the plaintiff could have been sustained."

The motion of the Hertz Corporation for summary judgment will be granted.

The case against Sidney Feuer gives us more trouble. He was the parking lot concessionaire and Gill was his employee. Gill was authorized to receive cars at the hotel door and to park them. However, he was not authorized expressly or by fair implication to use these cars for his own purposes. There is some evidence that he did not have a driver's license and that on a couple of occasions he got drunk on the job. He worked the midnight shift and his compensation consisted primarily of tips, but the concessionaire supplemented them to a degree. Payment for use of the parking lot was made to the hotel, which in turn, issued a check to Feuer for his share. If Gill wore a uniform, it was his own, it was not supplied by Feuer. He was never authorized to drive passengers anywhere or to get anything for hotel guests. Feuer testified that Gill was specifically told never to use guests' cars for anything of personal use; all runners were told that. The hotel did not have the right to fire Gill if it was dissatisfied with his services for any reason. They had to take it up with the concessionaire. Nor did it have a right to interfere with the running of the concessionaire's business as long as he complied with the provisions of the lease.

In fact, the only two incidents in connection with Gill's employment by Feuer that appear in the record as unusual, were that he had no driver's license and that he got drunk twice during the period of his employment. Neither of these seem to have any proximate relationship to his unauthorized use of Mosberg's car on the night of July 4th. His taking the car was without Feuer's knowledge; without the knowledge of Feuer's manager, and without the permission of anybody having authority to give it. Under the rule laid down in Sykes v. Babijuice Corp., Feuer was not responsible for his unauthorized acts. His motion for summary judgment will be granted.

The pleadings, depositions and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact, and that the moving parties are entitled to a judgment as a matter of law.

It is therefore ordered and adjudged that the motions for summary judgment be and the same are hereby granted and that the plaintiff take nothing by her suit from the defendants, the Hertz Corporation, Samuel Mosberg, Sidney Feuer and DiLido Hotel, Inc., severally, and that said defendants go hence without day and recover their costs to be taxed by the clerk, for which let execution issue.